UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DONALD CHAMPAGNE | CIVIL ACTION |
| VERSUS | NO. 10-2778 C/W<br>10-4376 |
| CHET MORRISON CONTRACTORS, INC., ET AL. | SECTION "R" (3) |

ORDER

On October 10, 2012, the Motion to Quash and for Protective Order [Doc. #79] filed by defendants/plaintiffs-in-limitation Chet Morrisson Contractors, Inc. and CM 15, L.L.C. (collectively, "CMC") came on for oral hearing before the undersigned. Present were Kristi Post on behalf of plaintiff, Lawrence Plunkett on behalf of defendant, and Michael Harper on behalf of claimant Randolph Vilo. After the oral hearing, the Court took the motion under advisement. Having reviewed the motion, the opposition, the case law and the parties' arguments, the Court rules as follows.

**I.     Background**

The complaint alleges as follows. Plaintiff Donald Champagne was an employee of CMC, which owned the vessel, CM-15, on which Champagne worked. Defendant Power Dynamics, L.L.C. performed repairs on the vessel. On November 14, 2009, Champagne was injured when a joint of pipe became "unexpectedly" dislodged from a pipe roller and struck him while he was on

board the CM-15.

Champagne sued CMC on August 18, 2010 under the Jones Act and general maritime law. Champagne alleges that CMC failed to provide him with a safe work environment and negligently repaired the CM-15.  On April 10, 2012, Champagne filed an amended complaint, in which he named Power Dynamics as an additional defendant.

Power Dynamics moved to dismiss for failure to state a claim.  Power Dynamics argued that Champagne has not alleged any facts that, if taken to be true, support his negligence claim against Power Dynamics. Champagne opposed the motion, which the District Court denied.

## II.     The Specific Discovery Requests

Claimant Randolph Vilo issued a notice of deposition to CMC with accompanying requests for production.  CMC seeks a protective order with regard to numerous discovery requests.

**RFP No. 1 and Area of Inquiry 59:**

CMC contends that the size of its worldwide work force and the number of Louisiana residents employed at the time of the incident are irrelevant.  Vilo argues that CMC's continued viability as an employer bears on his claim for future loss of earning capacity.  Vilo has testified that he intended to continue working for CMC.  He contends that the availability of future employment is relevant to his future wage loss claim.

Despite Vilo's arguments, the Court can not find that these requests are reasonably calculated to lead to the discovery of admissible evidence.  The Court has found no case law to support the argument that the future viability of a company is relevant to a claimant's claim for future loss of earning capacity.  With regard to these requests, the motion is denied.

**RFP No. 6 and Area of Inquiry 64:**

2

These requests seek all documents that reflect CMC's agreement with Apache to provide pipe-laying services. CMC contends that the requests are overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. CMC argues that it has already produced the contract under which the vessel was working at the time of the alleged incident. Vilo maintains that he is entitled to a copy of all contracts between Apache and CMC related to the job on which he was injured. The value of the contract is directly relevant to CMC's claim of limitation and the value of the limitation fund.

CMC has produced the contract under which the vessel was working at the time of the alleged incident. Other contracts with Apache are not reasonably calculated to lead to the discovery of admissible evidence. With regard to this request, then, the motion is denied.

**RFP Nos. 24 through 28 and Areas of Inquiry 82 through 86:**

These requests seek the entire personnel files of Captain John Bouquet, Supervisor Steve Price, Superintendent Jamie Laperousse, Tower Operator Sean Miller and Welding Superintendent Roger Mobley. CMC contends that these requests violate the personal privacy of individuals not a party to the litigation. CMC argues that plaintiffs must offer a specific basis for the need for personnel files.

Citing Fifth Circuit case law, Vilo notes that any claim of privacy interests must be analyzed in the context that both the federal rules of discovery, and the construction of the term "relevant" are broad. The Fifth Circuit has stated that it is aware of no privilege that would support the non-disclosure of personnel files. Vilo contends that the personnel files requested involve only those people who were on the CM-15 at the time of the accident and who either had direct supervisory control or who were actually involved in the operation that injured Vilo.

Having reviewed *Eckstein Marine Service, Inc. v. M/V Basin Pride*, 168 F.R.D. 38 (W.D. La. 1996), the Court finds that the personnel files of those supervisors and employees on board the CM-15 at the time of the alleged incident are reasonably calculated to lead to the discovery of admissible evidence and relevant to the dispute here. With regard to these requests, the motion is granted. However, the Court orders the parties to enter a confidentiality order to protect the personnel files and limit their use to this lawsuit and for the eyes of the parties and counsel only.

**RFP No. 36 and Area of Inquiry 94:**

These requests seek the safety audits of the CM-15 for the years 2006 through 2009 and specifically, November 2009. CMC contends that the requests are overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. CMC also argues that the term "safety audit" is vague. Vilo argues here that these records are clearly relevant, or, at a minimum calculated or likely to lead to relevant evidence as they will show any patterns or history of safety issues arising aboard the CM-15 that will assist Vilo in establishing his burden of proof in this matter.

With regard to these requests, the motion is granted. The Court does not find that the requests are overbroad temporally, unduly burdensome or not reasonably calculated to lead to the discovery of admissible evidence. Neither does the Court find that the requests are vague. Having heard oral argument, the Court is convinced that CMC understands what Vilo means by the term "safety audits."

**RFP No. 38:**

This request seeks all documents sent or received by CMC that relate to the accident. CMC has produced all accident reports and other documents prepared contemporaneously to the incident.

CMC maintains that the request is so broad that it includes the entire litigation file, which necessarily encompasses material protected by the work-product and/or attorney-client privilege. Vilo contends that such documents are prepared in the ordinary course of CMC's business to prevent similar accidents in the future. Vilo also argues that CMC has failed to produce any evidence to support privilege and has failed to point to any specific documents protected by a privilege.

CMC contends that with regard to this request, no safety bulletins as to the alleged incident exist. The Court can not order CMC to produce documents that counsel represents do not exist.

With regard to CMC's privilege argument, however, the Court notes that "[t]he privilege must be specifically asserted with respect to particular documents." *United States v. El Paso Co.*, 682 F.2d 530, 538 (5th Cir. 1982). Accordingly, CMC must produce a privilege log within the deadline established in this opinion. Vilo may then filed the appropriate motion to challenge any assertion of privilege, should circumstances so warrant.

**RFP No. 39 and Area of Inquiry 97:**

These requests seek all documents identifying CMC's library of safety and training films. CMC contends that the requests are overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. CMC already produced Champagne's and Vilo's personnel files that identify the training that they received.

Vilo contends that the purpose of this request is to show the training (via videos, etc. . . ) in CMC's possession that Vilo or his co-workers may have received, as well as the training they "did not receive." He further argues that these videos may well show proper and safe operation and/or maintenance of the tensioner machine that caused Vilo's injury and that had previously been malfunctioning in the days leading up to Vilo's accident.

With regard to this request, the motion is denied. CMC has represented to the Court that no master list of the safety and training films exists. CMC has already produced to Vilo and Champagne their personnel files that indicate the training that they received. The request, as worded, is overbroad and unduly burdensome.

The following three requests are addressed in tandem:

**RFP No. 40 and Area of Inquiry 98:**

These requests seek all documents relating to the organizational structure of CMC's safety department. CMC contends that the requests are overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**RFP No. 41 and Area of Inquiry 99:**

These requests seek all documents regarding the background and training of all safety directors, safety managers and/or safety representatives employed by CMC in November 2009. CMC contends that the requests are overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**RFP No. 42 and Area of Inquiry 100:**

These requests seek the same as above, albeit with regard to those employed today. CMC contends that the requests are overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

With regard to the above three inquiries, Vilo maintains that the corporate structure of CMC's safety department, and the education, background and experience of those that it employs to ensure the safety of the lives of its employees and others is directly relevant to Vilo's allegations of negligence in this case. Vilo has specifically asserted a lack of training or inadequate training by

CMC. Vilo argues that CMC's assertion that the adequacy (or inadequacy, as the case may be) of its safety department is not relevant lacks any logical or legal basis.

With regard to these three requests, the Court grants the motion with regard RFP Nos. 40 and 41 and Area of Inquiry Nos. 98 and 99. These requests are reasonably calculated to lead to the discovery of admissible evidence with regard to Vilo's claim of inadequate training. With regard to RFP No. 42 and Area of Inquiry No. 100, the motion is denied.

**RFP No. 44 and Area of Inquiry 102:**

Seek all documents regarding every meeting held by CMC after the accident. CMC contends that the requests are overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Vilo notes that CMC offers no argument to support its position.

The request, as written, is overbroad. It does not limit the "meetings" to those related to Vilo's alleged incident. Should Vilo wish to do so, he may narrow the request and re-propound it.

The following three requests are treated in tandem:

**RFP No. 46 and Area of Inquiry No. 104:**

These requests seek a copy of CMC's accident statistics for the five years before the accident. CMC contends that the requests are overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**RFP No. 47 and Area of Inquiry No. 105:**

These requests seek all documents that disclose the details of any "near miss," "incident," "accident," or "injury" in the past ten years. CMC contends that the requests are overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**RFP No. 48 and Area of Inquiry No. 106:**

These requests seek all OSHA forms prepared by CMC between January 1, 2004 and the date of the response. CMC contends that the requests are overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

With regard to the above three areas of inquiry, Vilo maintains that CMC's objections ignore the fact that a company's overall safety record is clearly relevant when, as here, Vilo has alleged a lack of proper training and/or proper safety policies and procedures. Vilo notes that a track record of near misses or accidents for the 10 years preceding this incident could clearly be used to establish
"notice" to CMC that their policies and procedures were inadequate. Vilo contends that such documents are commonly maintained and provided to governmental entities. Citing case law, Vilo argues that courts routinely allow evidence of other accidents when there is a substantial similarity between the occurrences.

With regard to these three requests, the Court grants the motion in part, limiting the production to the three years before the accident. The Court finds that the requests are reasonably calculated to lead to the discovery of admissible evidence, but that production from ten years – or even January 1, 2004 – before the accident is unduly burdensome. The Court also strikes the term "near miss" from RFP No. 47 and Area of Inquiry 105 as impermissibly vague.

The following two requests are treated in tandem:

**RFP No. 50 and Area of Inquiry No. 108:**

These requests seek all documents that relate to the manufacture, construction or repair of the pipe "tensioner" or "tension" machine from January 1, 2004 through the date of the response. CMC contends that the requests are overbroad, unduly burdensome and not reasonably calculated

to lead to the discovery of admissible evidence.

### RFP No. 51 and Area of Inquiry No. 109:

Seek all documents that relate to each and every repair or maintenance invoice of the pipe "tensioner" or "tension" machine from November 14, 2008 through the date of the response. CMC contends that the requests are overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

Vilo maintains that the tensioner machine had a history of malfunctioning prior to Vilo's accident, and had, in fact, caused an 80-plus hour shut down of the barge in the days leading up to Vilo's accident, after which a crew came aboard and attempted to repair the machine. Vilo notes that CMC's only response is, again, the same three general objections with no support for same.

CMC cites no case law to support its argument here but only asserts boilerplate objections. The motion is granted with regard to these two requests. They are reasonably calculated to lead to the discovery of evidence admissible to Vilo's claims.

### RFP Nos. 52 though 55 and Areas of Inquiry Nos. 110 though 113:

These requests seek all documents that support CMC's refusal to pay maintenance and cure to Vilo and copies of all claims or lawsuits filed in the past ten years due to CMC's refusal to pay maintenance and cure. CMC contends that all maintenance and cure has been paid to Vilo. They contend that the requests are thus irrelevant. CMC also maintains that the requests for claims or lawsuit filed in the past ten years is overbroad. Vilo disagrees with CMC's assertion that it has paid all maintenance and cure.

With regard to the maintenance and cure requests, RFP Nos. 52 and 53, the motion is granted to the extent that any responsive documents exist. If none exist, CMC shall affirmatively state so.

With regard to the requests for claims and lawsuits, RFP Nos. 54 and 55, the motion is granted in part, to the extent that CMC shall respond to the request for the past five years. Ten years is overbroad in this garden-variety maritime-injury lawsuit.

### III.     Conclusion

For the foregoing reasons,

**IT IS ORDERED** that the Motion to Quash and for Protective Order [Doc. #79] is GRANTED IN PART and DENIED IN PART as outlined above. The Court awards no costs.

New Orleans, Louisiana, this 16th day of November, 2012.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**